IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 22, 2025

## STATE OF TENNESSEE v. TODD JOHNATHAN GRUBB

**Appeal from the Criminal Court for Meigs County**
**No. 2020-CR-66      Jeffrey Wicks, Judge**

_____

## No. E2025-00071-CCA-R3-CD

_____

The Defendant, Todd Johnathan Grubb, appeals from the Meigs County Criminal Court's probation revocation of the nine-year sentence he received for his guilty-pleaded conviction for possession with the intent to sell or to deliver one-half gram or more of methamphetamine. On appeal, he contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and STEVEN W. SWORD, JJ., joined.

Kim Nelson, District Public Defender; and Mart Cizek, Assistant District Public Defender, for the appellant, Todd Johnathan Grubb.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Russell Johnson, District Attorney General; and Kristin Curtis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On April 30, 2021, the Defendant pleaded guilty to possession with the intent to sell or to deliver one-half gram or more of methamphetamine, and the trial court imposed a nine-year sentence to be served on supervised probation. The guilty plea hearing transcript is not included in the record.[1]

---

[1] *See* T.R.A.P. 24(b); *see also State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (The Defendant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal, which includes the obligation to have a transcript of the guilty plea hearing prepared); *State v. Stack*, 682 S.W.3d 866, 876 (Tenn. Crim. App. 2023).

On October 27, 2023, a probation violation warrant was issued based upon allegations that the Defendant failed to report to the probation office as instructed, that he had not "made contact" with his probation officer since September 11, 2023, that he failed to report a change "in the status of residence" in August 2023, that he had absconded from supervision, and that he had failed to pay court costs and $3,000 "to the MCSO drug fund." The warrant reflects that the probation officer's attempts to locate the Defendant "resulted in no contact" and that he had only paid $125 toward court costs.

On December 15, 2023, a second probation violation warrant was issued based upon the allegations that, at the time of his arrest for the probation violation warrant, the Defendant possessed a clear plastic bag containing approximately 27.45 grams of a substance consistent with methamphetamine and that, as a result, the Defendant was charged with possession with the intent to sell or to deliver methamphetamine.

At a December 18, 2024 probation revocation hearing, probation officer Margaret Gore testified that she had reviewed the Defendant's supervision history and that Kayla Girod had been the Defendant's probation officer. Ms. Gore said that the first probation violation warrant was issued because Ms. Girod was unable to contact the Defendant, although she attempted to speak with the Defendant by telephone and went to the Defendant's home. Ms. Gore said that June 2023 was the Defendant's last in-person meeting with Ms. Girod. Ms. Gore said the Defendant told Ms. Girod that his home burned in August 2023, and that he was attempting to purchase a camper. Ms. Gore said that Ms. Girod visited the Defendant's home on September 8, 2023, and that Ms. Girod did not find anyone there. Ms. Gore said that Ms. Girod and the Defendant spoke by telephone on September 11, 2023, and that the Defendant said he would call Ms. Girod to schedule a time for him to report to the probation office. Ms. Gore said that Ms. Girod unsuccessfully attempted to contact the Defendant on September 18, 20, and 25, 2023.

Ms. Gore testified that Ms. Girod twice attempted to find the Defendant during home visits. Ms. Gore said that during the September 8 home visit, a camper was on the property. Ms. Gore said that during an October 13, 2023 home visit, two campers were on the property, that Ms. Girod knocked on the door of one of the campers, and that a woman looked through a window, "said a bad word," and refused to come outside. Ms. Gore said her records reflected that the Defendant's last contact with anyone in the probation office was early September 2023. Ms. Gore stated that the second probation violation warrant was based upon the Defendant's possession of methamphetamine.

Meigs County Sheriff's Department Corporal Benjamin Christian testified that on December 7, 2023, he was dispatched to the McMinn County line to take custody of the Defendant, who had been arrested for the probation violation warrant. Corporal Christian said that the Defendant was removed from a McMinn County Sheriff's deputy's patrol car

- 2 -

and that Corporal Christian patted down the Defendant. Corporal Christian said that during the pat down, he found a bag containing what was later determined to be methamphetamine in the Defendant's jacket pocket. Corporal Christian said that the bag weighed approximately 27 grams, which he described as a large quantity of drugs "beyond personal use."

Corporal Christian identified the Tennessee Bureau of Investigation forensic chemistry report, which was received as an exhibit and which reflected that the substance possessed by the Defendant was methamphetamine and weighed 26.61 grams.

On cross-examination, Corporal Christian testified that the Defendant was arrested in McMinn County following a traffic crash based upon the outstanding probation violation warrant. Corporal Christian said that although he did not recall whether he and the McMinn County deputy discussed whether the Defendant had been searched, Corporal Christian's policy was to conduct a pat-down search of a person before placing the person in his patrol car.

Cindy Grubb, the Defendant's mother, testified that the Defendant lived in a home she owned before it burned in late August or early September 2023. She said that afterward, two campers were placed on the property, that the Defendant lived in one, and that the Defendant's brother lived in the other. She said that she was not at the property during any of the probation officer's home visits during this time.

Ms. Grubb testified that, at an unspecified time, the Defendant obtained treatment at The Rock House, that she attended his graduation ceremony, and that he was given a certificate for completing the program. She said the certificate, along with other documents, burned in the house fire. She said that if the court returned the Defendant to probation, he would live at her home, which was rebuilt after the fire. She said that the Defendant would be required to work and would be prohibited from engaging in unlawful activity.

On cross-examination, Ms. Grubb testified that the house fire occurred shortly after the Defendant was released on probation. She said that the Defendant went to The Rock House not long after being released on probation and that it was a six-month, inpatient program. She said the Defendant worked in construction before his arrest for the probation violation warrant.

The Defendant testified that he was released from custody at the time of the guilty plea hearing, that he reported to his probation officer for more than two years, and that he completed The Rock House treatment program in December 2022. He said that he worked with sheet metal and bush hogs while attending the treatment program. He said that his

mother's home burned in late summer 2023, and that the fire impacted his life. He admitted that he had "some little hiccups with probation" and that his probation officer filed the probation violation report on October 27, 2023. He said that he had been in custody for 377 days for the probation violation and that he was not charged with any offenses in McMinn County. He said that if the trial court returned him to probation, he would live with his mother and work in construction as a heavy equipment operator with his father.

On cross-examination, the Defendant testified that he told Ms. Girod about the house fire. When asked why he did not report to Ms. Girod as instructed, he said that Ms. Girod knew he worked long shifts and that Ms. Girod told him "just try to get in touch with me and we'll work something out." He said, "And that's the reason it kept going so long. I did talk to her, but it was just in long periods." He acknowledged that he did not talk to Ms. Girod by telephone for a time and that he did not see her when she came to the property for two home visits. He said that he knew the rules of probation, which required him to report to his probation officer. He said he "knew it was a problem" when he had not spoken to Ms. Girod for two to three months. He agreed that he possessed methamphetamine about one year after completing The Rock House treatment program.

The trial court determined that the Defendant violated the conditions of his release by absconding from supervision and by failing to report to his probation officer. The court found that the probation officer conducted home visits on September 18, 20, and 25, 2023, but that the Defendant was never home. The court found that the Defendant's last in-person meeting with his probation officer was June 2023 and that he last spoke by telephone with his probation officer on September 11, 2023. The court, likewise, determined that the Defendant violated the conditions of his release by possessing 26.61 grams of methamphetamine at the time of his arrest for the probation violation. The court noted that the new drug-related charge was "the exact same charge that he was on probation for," possession with the intent to sell or to deliver one-half gram or more of methamphetamine.

In considering the appropriate consequence, the trial court stated, "It is clear to the Court that if the defendant doesn't avail himself to probation, then there's nothing probation can do for him." The court determined that the Defendant was not a good candidate for continued probation "because he's out allegedly dealing [m]ethamphetamine while on probation for [m]ethamphetamine." The court revoked the Defendant's probation and ordered him to serve the remainder of his sentence in confinement. This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. He argues that the court failed to consider alternative punishments before ordering him to serve his sentence in confinement and that the court failed to consider whether confinement

- 4 -

would serve the ends of justice, was in his best interest, and would serve the public interest. The State responds that the court did not abuse its discretion by ordering the Defendant to serve the remainder of his sentence. We agree with the State.

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Dagnan*, 641 S.W.3d at 757. A separate hearing is not required, but the court must address the issue on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Id*. at 757-58.

After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c) (Supp. 2024), -310 (Supp. 2024). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that on April 30, 2021, the Defendant pleaded guilty to possession with the intent to sell or to deliver methamphetamine. He subsequently completed a six-month, drug-related treatment program. However, approximately two years into his supervision, he stopped communicating with his probation officer and failed to report to the probation office as instructed. The Defendant was not present for at least two home visits. Further, upon his arrest for the probation violation, the Defendant possessed 26.61 grams of methamphetamine, which Corporal Christian stated was a large quantity beyond the amount for personal use. The Defendant did not dispute possessing methamphetamine. We note that the first probation violation warrant was issued on October 27, 2023, and the Defendant did not contact anyone in the probation office before

- 5 -

his arrest on December 7, 2023. The record supports the trial court's determination that the Defendant violated the conditions of his probation by absconding from supervision, failing to report to his probation officer, and possessing methamphetamine.

The trial court, likewise, did not abuse its discretion by ordering the Defendant to serve the remainder of his nine-year sentence in confinement. In considering the appropriate consequence for the violation, the court found that the Defendant had failed to avail himself to the benefits of probation and that, as a result, the Defendant was not a favorable candidate for continued probation supervision. The court noted the seriousness of the underlying conviction offense and the new criminal charge and found that although the Defendant had received probation for possession with the intent to sell or to deliver methamphetamine, the Defendant continued to engage in the same criminal conduct. The record supports the trial court's determination that the Defendant would not comply with the conditions of his release. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

**s/Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE